UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LUTHERAN HOMES, INC., <br> d/b/a/ Lutheran Life Villages, <br><br> Plaintiff, <br><br> v. <br><br> LOCK REALTY CORPORATION IX, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 1:14-CV-102 JD <br> ) <br> ) <br> ) <br> ) <br> ) |

## **OPINION AND ORDER**

This is a contract dispute over the transfer of Medicaid certification rights between two Indiana nursing facilities. The State of Indiana requires a bed to be certified in its Medicaid program in order to fully reimburse a facility for services provided to the bed's occupant. At the time the parties entered the agreement at issue, the State had a statutory moratorium on granting new certifications, but it permitted facilities to transfer their existing certification rights amongst themselves. The plaintiff, Lutheran Homes, Inc., which had a surplus of certified beds, agreed to sell the certification rights for 35 of its beds to the defendant, Lock Realty Corporation IX, for the price of $350,000. However, the moratorium contained a sunset provision, and between the time the contract was entered and when the closing was set to take place, it became apparent that the legislature would not act to extend the moratorium. Lock Realty thus refused to pay for and accept Lutheran Homes' certification rights, deciding to instead wait and seek them from the State at no cost. In response, Lutheran Homes filed this action to enforce the contract, and has now moved for summary judgment. For the following reasons, the motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff Lutheran Homes owns a nursing facility in Fort Wayne, Indiana, known as Lutheran Life Villages. The Defendant Lock Realty Corporation IX owns a nursing facility in Goshen, Indiana, known as Courtyard Healthcare Center. Both facilities are licensed by the Indiana Department of Health to operate a certain number of comprehensive care beds, or nursing home beds, which allows them to receive reimbursement through Indiana's Medicaid program for services provided to the occupants of those beds. As of January 2014, Lutheran Life Villages contained 224 comprehensive care beds, all of which were certified to participate in Medicaid, while Courtyard Healthcare Center contained a total of 188 comprehensive care beds, of which 138 were certified to participate in Medicaid.

Since 2006, Indiana had imposed a statutory moratorium on certifying additional nursing home beds for its Medicaid program. The moratorium was amended on several occasions, and the version in place as of January 2014 was enacted in 2011. 2011 Ind. Legis. Serv. Pub. L. 229-2011, § 163 (codified at Ind. Code § 16-28-16-1 *et seq.*). Under that moratorium, the State was prohibited from certifying any new comprehensive care beds for participation in the Medicaid program except in limited circumstances. *Id.* (Ind. Code § 16-28-16-4(a)). However, facilities remained free to transfer the Medicaid certification rights amongst themselves, so a facility seeking to add Medicaid-eligible comprehensive care beds to its facility could purchase the rights to certifications for those beds from another facility. *Id.* (Ind. Code § 16-28-16-4(b)). The 2011 legislation also included an expiration date of June 30, 2014 for the moratorium, meaning the moratorium would sunset at that time absent further legislative action. *Id.* (Ind. Code § 16-28-16-7).

In January 2014, Lock Realty sought to acquire certification rights for more of its comprehensive care beds, so it contacted Lutheran Homes, which was not using all of the

2

certified beds at its facility. After some negotiation, the parties reached an agreement by which Lutheran Homes would sell Lock Realty the Medicaid certification rights for 35 beds in exchange for $350,000. The Medicaid Certification Rights Transfer Agreement, which the parties executed in late January 2014, called for closing to take place within five business days of the State's approval of the transfer. The transfer of the certification rights would be effective as of April 1, 2014.

Around this same time, legislation was introduced in the Indiana legislature to extend the moratorium. On January 8, 2014, Senate Bill 173, entitled Nursing Facility Moratorium, was introduced in the Indiana Senate. As initially drafted, the bill called for a five-year extension of the moratorium, and also called for a ban on transfers of certification rights. The bill underwent several minor amendments, and was passed by the Indiana Senate on January 23, 2014, at which point it was sent to the Indiana House of Representatives for consideration. It was widely expected that the legislature would extend the moratorium in at least some form, and the prospect of a ban on the transfer of certification rights created an urgency to complete any such transactions, so it was at this point that Lutheran Homes and Lock Realty executed their Agreement.

The Indiana House then considered the bill for the first time on February 18, 2014. The bill eventually passed through the House on March 3, 2014, but not before undergoing several amendments, the most significant of which reduced the moratorium from five years to one. Therefore, the bill entered the conference committee process for the two houses to reconcile their versions of the bill. In addition, a similar version of the moratorium was inserted into a different bill that had originated in the House, and that bill went to a conference committee as well. However, the conference committee on the Senate bill never took up the bill, and the conference

committee on the House bill removed the Medicaid moratorium, so the bill was enacted without an extension of the moratorium. Thus, when the legislative session ended on March 13, 2014, the legislature had not passed any bill extending the moratorium, meaning that, to the surprise of many in the industry, the moratorium would be allowed to expire on June 30, 2014.

Meanwhile, the State approved the parties' transfer of the certification rights, and the parties received notice of the approval on March 13 or 14, 2014. Since the Agreement called for the closing to occur within five days of the approval, Lutheran Homes sent Lock Realty a signed bill of sale along with wire transfer instructions on March 17, 2014. However, realizing that it could now receive the Medicaid certifications from the State at no cost once the moratorium expired on June 30, 2014, Lock Realty refused to close the transaction and pay the purchase price. Lutheran Homes responded by filing this suit against Lock Realty for breach of contract. In its Answer, Lock Realty admits that it entered the Agreement and that it has not paid the purchase price, but it asserts four affirmative defenses: (1) failure of consideration; (2) impracticability of performance; (3) mutual mistake of fact; and (4) failure to mitigate damages. [DE 15]. Lutheran Homes immediately moved for summary judgment on its claim for breach of contract and as to each of Lock Realty's affirmative defenses except for failure to mitigate damages. After a limited discovery period, that motion is now fully briefed.

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006); *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. DICSUSSION

The substantive law of Indiana governs the resolution of this breach of contract action, as specified in the parties' Agreement. The elements of a breach of contract action in Indiana are the existence of a contract, the defendant's breach of the contract, and damages. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993). Lock Realty does not dispute the existence of a contract or that it has not paid the purchase price, but offers three affirmative defenses to breach and one affirmative defense to damages. Lutheran Homes' motion addresses each of the affirmative defenses to breach, and the Court addresses each in turn.

Before turning to the merits of the motion, though, Lock Realty first argues that the motion should be denied because Lutheran Homes failed to properly cite to materials in the record in support of its motion. Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

5

(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Lock Realty contends that "Lutheran Homes made no attempt to comply with the requirements of Rule 56," but that is simply not true. Lutheran Homes supported its motion with citations to the Agreement, Lock Realty's Answer, an affidavit from Lutheran Homes' President and CEO, and an affidavit from its attorney. Those materials establish the existence of the contract and Lutheran Homes' performance of its contractual obligations. While several paragraphs of Lutheran Homes' statement of material facts are not supported by citations to the record, those paragraphs merely provide background on the statutory Medicaid requirements and the moratorium, and are not essential to its motion. The Court therefore finds that Lutheran Homes adequately complied with Rule 56(c)(1), and turns to the merits of the motion.

**A.     Failure of Consideration**

Lock Realty first asserts the affirmative defense of failure of consideration. "There is a failure of consideration when a party to a contract fails to perform those acts promised." *Alber v. Standard Heating & Air Conditioning, Inc.*, 476 N.E.2d 507, 510 (Ind. Ct. App. 1985). As the Seventh Circuit has noted in applying Indiana law, "the phrase 'failure of consideration' is a misnomer," since "[a] party asserting the defense of failure of consideration is not really arguing that the contract lacks the necessary bargained for exchange. Rather, the party contends that his adversary has failed to perform her obligation under the contract." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1122 n.3 (7th Cir. 2001). Here, Lock Realty does not argue that Lutheran Homes failed to perform any act required of it under the Agreement, but makes a more nuanced argument that because the expiration of the moratorium eliminated the commercial market for Medicare certification rights as of July 1, 2014, Lutheran Homes' transfer

of those rights conveyed nothing of value to Lock Realty, resulting in a failure of consideration. *See* 6 Ind. Law Encyclopedia Contracts § 24 (noting that "[s]ome older cases have held that there is a failure of consideration if a deed bargained for conveys nothing" (citing *Murphy v. Jones*, 7 Ind. 529 (1856)); 17 C.J.S. Contracts § 164 ("An agreement under which a party parts with no value is void for failure of consideration.").

Even assuming an Indiana court would accept that legal premise, however, Lock Realty's argument fails on its facts. The expiration of the moratorium on new Medicaid certifications did not alter the requirement for a comprehensive care bed to be certified to participate in Indiana's Medicaid program. All it did was undercut the commercial market for those certifications, since they could now be sought from the State, apparently at no cost. However, the certifications themselves are still of great value to any facility seeking reimbursement through Medicaid, and the certifications that Lutheran Homes transferred to Lock Realty under the Agreement conveyed exactly the same rights after the moratorium as before. In fact, after refusing to accept the certifications from Lutheran Homes, Lock Realty sought and received those exact same certifications from the State. Therefore, despite the diminished commercial value of the certifications, Lutheran Homes cannot be said to have conveyed nothing, or even anything less than it agreed to. *See* 6 Ind. Law Encyclopedia Contracts § 24 ("Generally, where a party receives all he or she has bargained for, there is no lack or failure of consideration, even though what the party receives is not as valuable as he or she had supposed it to be.").

In addition, the certifications that Lutheran Homes transferred to Lock Realty were effective April 1, 2014, while the moratorium did not expire until June 30, 2014. Thus, even if the Court were to accept Lock Realty's argument that the certifications became worthless upon the expiration of the moratorium, Lutheran Homes would have still conveyed three months'

7

worth of certification rights. Had Lock Realty known at the time it entered the Agreement that it could secure the rights at no cost as of July 1, 2014, perhaps it would have paid a lower price or chosen to wait. But Lock Realty's realization that the certification rights were worth less than it agreed to pay does not amount to a failure of consideration. 17 C.J.S. Contracts § 164 ("If the promisor gets what he or she has bargained for, there is no failure of consideration. The fact that the consideration subsequently diminishes in value or becomes of no value at all cannot relieve the promisor from liability on his or her promise."). Therefore, the Court grants summary judgment against Lock Realty on its affirmative defense of failure of consideration.

**B.     Mutual Mistake**

Lock Realty next argues that the contract should be voided because of a mutual mistake of fact. "The doctrine of mutual mistake provides that where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange or values contemplated by the parties." *Breeden Revocable Trust v. Hoffmeister-Repp*, 941 N.E.2d 1045, 1054 (Ind. Ct. App. 2010). Importantly for these purposes, however, "the doctrine of mutual mistake does not cover an erroneous 'prediction or judgment as to events to occur in the future." *United States v. Sw. Elec. Co-op., Inc.*, 869 F.2d 310, 314 (7th Cir. 1989) (quoted in *Jay Cnty. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 692 N.E.2d 905, 912 (Ind. Ct. App. 1998)); *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 623 (7th Cir. 2010) (stating that "predications [*sic*] cannot be the basis of mutual mistake"). Rather, "the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined" under this doctrine. Restatement (Second) of Contracts § 151 cmt. a.

Lock Realty articulates two assumptions as to which it contends the parties were mutually mistaken. The first is "that the certification rights had at least some value." [DE 26 p. 12]. However, this assumption was not mistaken. As of January 2014, when the parties entered the agreement, the certification rights did have value, as discussed above, and also because it was still possible at that point that the moratorium would be extended. The subsequent reduction of the value of those rights does not mean the parties were mistaken as to an existing fact at the time they made the agreement, so this assumption cannot support a mistake of fact defense.

The second assumption as to which Lock Realty contends the parties were mistaken is "that legislation was past the point where not passage [*sic*] was not a rational basis on which to make business decisions." [DE 26 p. 12]. However, that is nothing more than a verbose way of saying the parties *predicted* that legislation would pass to extend the moratorium, which cannot be the basis for a mistake of fact defense. *Jay Cnty. Rural Elec. Membership Corp.*, 692 N.E.2d at 912. That the parties allegedly viewed this prediction as a sure thing, such that it was irrational to even consider the alternative,[1] does not make it any less of a prediction.

In arguing to the contrary, Lock Realty relies heavily on the Seventh Circuit's opinion in *Louis & Karen Metro Family, LLC*, 616 F.3d 618. There, the parties entered a real estate agreement that depended in part on the completion of a construction project being funded in part by the City of Lawrenceburg, Indiana. *Id.* at 620. At the time the parties entered the agreement, all of the funding for the project had already been committed. *Id.* However, the City was

---

[1] Though the Court accepts Lock Realty's assertion of its belief for the purpose of summary judgment, it is difficult to see how any party, much less the sophisticated parties here, could view as irrational the possibility that a bill that has only passed through one house might not become law. Lutheran Homes also denies having shared this belief, in which case there would be only a unilateral mistake, if any. Since this belief is only a prediction, though, as to which the mistake of fact defense does not apply, the Court need not reach whether Lock Realty's evidence supports an inference as to Lutheran Homes' belief.

subsequently able to withdraw its funding through a resolution passed by its common council, causing the project to be abandoned. *Id.* Neither party to the contract had realized that funding for the project could be revoked in that manner, so the district court found that the parties were mutually mistaken as to the present fact that the project was already fully funded when the parties entered the agreement. *Id.* at 622–23; *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy*, No. 4:06-cv-177, 2011 WL 1196938, at *9 (S.D. Ind. May 9, 2011). The Seventh Circuit accepted that finding, but reversed on other grounds.

No such mistake of a present fact is alleged here, though. Lock Realty does not suggest that the parties did not know that the existing moratorium was expiring, that legislation had to be enacted in order to extend the moratorium, or that such legislation had not yet been passed. If, for example, the parties believed that the bill's passage by the Indiana Senate was effective to extend the moratorium, and did not realize that the bill could still be defeated in the House or by the governor, then this case would be analogous to *Metro Family*. Lock Realty has not suggested that, though, nor could it plausibly do so. Rather, all it has alleged is that even though the parties knew a bill still needed to be enacted in order to extend the moratorium, they viewed the passage of such a bill as extremely likely. But likely or not, the belief that the moratorium would be extended was still a prediction, and thus cannot support a mutual mistake of fact defense. The Court therefore grants summary judgment as to this affirmative defense.

## C. Impracticability of Performance

Lock Realty finally argues that its payment should be excused under the doctrine of impracticability of performance. Under that doctrine, a party is excused from performing when, in pertinent part, an unexpected event has rendered the party's performance commercially impracticable. *See Marovich Land Corp. v. J.J. Newberry Co.*, 413 N.E.2d 935, 943 (Ind. Ct. App. 1980). Indiana has never recognized that doctrine, and instead insists that a party's

10

performance become impossible before excusing it. *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) ("To invoke impossibility, one must demonstrate that performance is not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." (internal quotation omitted)). The required degree of difficulty of performance is inconsequential here, though, and both of these doctrines are inapplicable, because Lock Realty's performance was not affected in any way by the expiration of the moratorium.

Lock Realty argues that its performance should be excused because "[i]t is impractical to pay $350,000 for something which is now worthless." [DE 26 p. 13]. However, whether it was "impractical" for Lock Realty to have entered the contract has nothing to do with whether its payment of the purchase price became "impracticable." Lock Realty's obligation under the contract was to pay Lutheran Homes $350,000, and its performance of that obligation was not made any more difficult by the expiration of the moratorium. Lock Realty's true objection is that *Lutheran Homes' performance*—transferring the certification rights—was no longer worth the $350,000 it agreed to pay. However, that argument would be encompassed, if at all, under the doctrine of frustration of purpose, which Indiana does not recognize, and which Lock Realty expressly disclaims. Therefore, the Court grants summary judgment as to this affirmative defense, as well.

## IV.  CONCLUSION

Lutheran Homes' motion for summary judgment [DE 19] is GRANTED in full, meaning as to all claims and defenses asserted in this action with the exception of Lock Realty's affirmative defense of failure to mitigate damages. All that remains to be decided is the measure of Lutheran Homes' damages.

SO ORDERED.

ENTERED: March 2, 2015

              /s/ JON E. DEGUILIO
              Judge
              United States District Court