UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LUTHERAN HOMES, INC., d/b/a Lutheran Life Villages, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:14-CV-102 JD ) |
| LOCK REALTY CORPORATION IX, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This is a breach of contract action arising out of the sale of Medicaid certification rights from one nursing home operator to another. The State of Indiana requires a bed to be certified in its Medicaid program in order to fully reimburse a facility for services provided to the bed's occupant. At the time the parties entered the agreement at issue, the State had a statutory moratorium on granting new certifications, but it permitted facilities to transfer their existing certification rights amongst themselves. The plaintiff, Lutheran Homes, Inc., which had a surplus of certified beds, agreed to sell the certification rights for 35 of its beds to the defendant, Lock Realty Corporation IX, for the price of $350,000.

However, Lock Realty ultimately refused to proceed with the sale, so Lutheran Homes filed this action for breach of contract. The Court has already granted a motion for partial summary judgment in Lutheran Homes' favor as to liability, leaving only the measure of its damages to be established. That issue involves two primary components: what amount of damages Lutheran Homes actually sustained as a result of the breach, and whether Lutheran Homes unreasonably failed to mitigate its damages. Lutheran Homes now moves for summary judgment on the first of those components, arguing that its damages prior to any failure-to-

mitigate defense are $350,000. For the reasons that follow, the Court grants the motion in that respect. Lutheran Homes also seeks summary judgment that it is entitled to prejudgment interest, but the Court declines to take up that issue at this stage.

## I. FACTUAL BACKGROUND

Plaintiff Lutheran Homes owns a nursing facility in Fort Wayne, Indiana, known as Lutheran Life Villages. Defendant Lock Realty Corporation IX owns a nursing facility in Goshen, Indiana, known as Courtyard Healthcare Center. Both facilities are licensed by the Indiana Department of Health to operate a certain number of comprehensive care beds, or nursing home beds, which allows them to receive reimbursement through Indiana's Medicaid program for services provided to the occupants of those beds. As of January 2014, Lutheran Life Villages contained 224 comprehensive care beds, all of which were certified to participate in Medicaid, while Courtyard Healthcare Center contained a total of 188 comprehensive care beds, of which 138 were certified to participate in Medicaid.

Since 2006, Indiana had imposed a statutory moratorium on certifying additional nursing home beds for its Medicaid program. The moratorium was amended on several occasions, and the version in place as of January 2014 was enacted in 2011. 2011 Ind. Legis. Serv. Pub. L. 229-2011, § 163 (codified at Ind. Code § 16-28-16-1 *et seq.*). Under that moratorium, the State was prohibited from certifying any new comprehensive care beds for participation in the Medicaid program except in limited circumstances. *Id.* (Ind. Code § 16-28-16-4(a)). However, facilities remained free to transfer the Medicaid certification rights amongst themselves, so a facility seeking to add Medicaid-eligible comprehensive care beds to its facility could purchase the rights to certifications for those beds from another facility. *Id.* (Ind. Code § 16-28-16-4(b)). The 2011 legislation also included an expiration date of June 30, 2014 for the moratorium, meaning

the moratorium would sunset at that time absent further legislative action. *Id.* (Ind. Code § 16-28-16-7).

In January 2014, Lock Realty sought to acquire certification rights for more of its comprehensive care beds, so it contacted Lutheran Homes, which was not using all of the certified beds at its facility. After some negotiation, the parties reached an agreement by which Lutheran Homes would sell Lock Realty the Medicaid certification rights for 35 beds in exchange for $350,000. The Medicaid Certification Rights Transfer Agreement, which the parties executed in late January 2014, called for closing to take place within five business days of the State's approval of the transfer. The transfer of the certification rights would be effective as of April 1, 2014.

Around this same time, the Indiana legislature was considering legislation that would have extended the moratorium and that may have banned any transfers among facilities. However, when the legislative session ended on March 13, 2014, the legislature had not passed any bill extending the moratorium, meaning that the moratorium would be allowed to expire on June 30, 2014.[1] Meanwhile, the State approved the parties' transfer of the certification rights, and the parties received notice of the approval on March 13 or 14, 2014. Since the Agreement called for the closing to occur within five days of the approval, Lutheran Homes sent Lock Realty a signed bill of sale along with wire transfer instructions on March 17, 2014. However, realizing that it could now receive the Medicaid certifications from the State at no cost once the moratorium expired on June 30, 2014, Lock Realty refused to close the transaction and did not pay the purchase price.

---

[1] A limited number of facilities remained subject to a similar moratorium, though, so there was still a subset of facilities to which Lutheran Homes could have sold its certification rights, giving rise to Lock Realty's affirmative defense of failure to mitigate damages.

After Lock Realty refused to accept the transfer of the 35 certifications, the State notified the parties that the certifications needed to be lodged at one of the parties' facilities or the certifications would be permanently removed from the State's inventory and would cease to exist. To avoid that result, Lutheran Homes agreed to reinstate each of the certifications in question to its facility. However, the rooms in Lutheran Homes' facility that were subject to those certifications have been unoccupied since at least 2008 due to the overall low occupancy at the facility. In fact, even though the facility has 213 beds that are certified through Indiana Medicaid, including the 35 beds at issue here, the highest number of Medicaid beneficiaries that have been cared for at the facility during this period is 87. The overall occupancy at the facility has also not exceeded sixty percent. Thus, Lutheran Homes asserts that it has not received any reimbursements or any other sort of revenue or benefit from having reinstated the certifications at its facility. Moreover, in 2015, the Indiana legislature enacted a law that not only reinstated the moratorium, but also banned the transfer of certifications between facilities. Thus, Lutheran Homes, which still owns the 35 certifications, has no present ability to sell them.

Lutheran Homes initiated this action against Lock Realty in April 2014, asserting a single claim for breach of contract. In response, Lock Realty did not dispute the existence of the contract or that it declined to pay the $350,000 purchase price, but asserted three affirmative defenses to liability and one affirmative defense to damages. On a previous motion for summary judgment, the Court granted summary judgment against Lock Realty on its affirmative defenses to liability, leaving only the issue of damages to be decided. In light of arguments raised in advance of trial, the Court then granted leave to Lutheran Homes to file a second motion for summary judgment as to the amount of its damages prior to Lock Realty's affirmative defense for failure to mitigate damages. That motion has been briefed and is ripe for ruling.

4

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). When the moving party would bear the burden of proof at trial, that party "must establish affirmatively the lack of 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson*, 477 U.S. at 249–50); *see also Branham v. Snow*, 392 F.3d 896, 907 (7th Cir. 2004) (stating that where the movant bears the burden of proof, it "must show that the evidence . . . is so one-sided no reasonable jury could find for" the opposing party).

## III. DICSUSSION

Lutheran Homes seeks summary judgment on two issues. First, that the principal amount of its damages is $350,000, prior to Lock Realty's affirmative defense that Lutheran Homes

failed to mitigate its damages. Second, that it is entitled to prejudgment interest on that amount. The Court addresses each issue in turn.

**A.      Breach of Contract Damages**

Lutheran Homes first seeks summary judgment that its actual damages prior to any affirmative defense are $350,000, which was the purchase price for the certification rights that Lock Realty refused to pay. Upon a breach of contract, the non-breaching party is entitled to recover as damages the "loss actually suffered as a result of the breach." *Fischer v. Heymann*, 12 N.E.3d 867, 871 (Ind. 2014). That is calculated as the amount of money that will put the party in the same position it would have been in "if the contract had not been broken." *Fischer v. Heymann*, 12 N.E.3d 867, 871 (Ind. 2014). As the Indiana Model Civil Jury Instructions state this rule, the measure of damages for breach of contract is the amount that would put the plaintiff "in the same position it would have been in had the contract been fulfilled." Ind. Model Civil Jury Instructions, No. 3313 (2014).

The contract here called for Lock Realty to pay Lutheran Homes $350,000, and for Lutheran Homes to transfer 35 of its certification rights. However, Lock Realty has not paid any amount to Lutheran Homes, and it refused to accept the transfer of the certification rights. As a result, Lutheran Homes currently has none of the $350,000, but it still has all of the certification rights. The measure of damages is therefore the amount of money that will put Lutheran Homes in the position it would have been in had it instead received the $350,000 and transferred the certification rights. As the plaintiff, Lutheran Homes bears the burden of proof on that question.

To begin with, it is undisputed that the contract required Lock Realty to pay Lutheran Homes $350,000, and that it has not done so. The starting point for measuring Lutheran Homes' damages is therefore $350,000. The parties focus their arguments on the latter half of the equation, relative to the value of the certification rights that Lutheran Homes still possesses. A

party may not receive damages that would place it "in a better position than [it] would have been if the contract had not been broken." *Fischer*, 12 N.E.3d at 871; *see also Sheek v. Mark A. Morin Logging, Inc.*, 993 N.E.2d 280, 289 (Ind. Ct. App. 2013) (noting also that "the law disfavors a windfall or a double recovery"); *Block v. Magura*, 949 N.E.2d 1261, 1268 (Ind. Ct. App. 2011) (holding that a plaintiff could not recover the entire purchase price under a breached contract for the sale of an interest in a partnership where the plaintiff also retained that interest after the breach). Therefore, to receive the entire $350,000 as damages, Lutheran Homes must also prove that it has not derived any value from not having transferred the certification rights to Lock Realty.

The Court finds that Lutheran Homes has done so. Medicaid certification rights have no intrinsic value. Rather, they are a legislative creation whose only apparent source of value is that they permit the holder of the certification to receive certain reimbursements for services provided to the occupant of the certified bed, or that they could be sold to another entity seeking to receive those reimbursements. As to the sale value, Lock Realty does not present any argument that the certifications have been or will be of any value to Lutheran Homes. The undisputed evidence is that Lutheran Homes has not actually sold any of the certifications in question.[2] And because the legislature has since banned the transfer of certification rights, the certification rights have no present sale value, either. Though the legislature could conceivably permit transfers of the certification rights in the future, that possibility would be purely speculative and cannot justify reducing Lutheran Homes' damages. *Crestwood Park, Inc. v. Apostal*, 431 N.E.2d 789, 793 (Ind.

---

[2] Lock Realty does claim that Lutheran Homes should have sold the certifications but unreasonably failed to do so, but that is part of its affirmative defense and does not affect the amount of damages that Lutheran Homes actually sustained. *Fischer*, 12 N.E.2d at 871 ("[T]he burden of proving that the non-breaching party has failed to use reasonable diligence to mitigate damages lies with the party in breach . . . ." (internal quotation omitted)).

1982) (holding that damages could not be affected by possible future action by a municipality, as that would be the "product of conjecture" and "unadulterated speculation").

The only remaining question is whether Lutheran Homes has used the certification rights in its facility, or will do so in the future, to receive reimbursements or other value it would not have otherwise received. On that point, Lutheran Homes has submitted an affidavit from Alex Kiefer, its President and CEO, in which he states that Lutheran Homes has not used or received any revenue or other benefit from the certification rights. Mr. Kiefer explains that the facility currently has 213 skilled nursing beds, including the 35 beds that were the subject of the parties' transaction, and that since May 2014, the highest number of Medicaid beneficiaries that have been cared for at the facility was 87. Accordingly, Mr. Kiefer states that Lutheran Homes has not, and will not, even come close to needing any of the 35 certification rights at issue. [DE 86-1]. Moreover, Lutheran Homes responded to a set of interrogatories that Lock Realty propounded following Lutheran Homes' motion, and it attested in that response that none of the 35 rooms whose certification rights were sold have been occupied at any time from April 1, 2014 through the present. [DE 96-1]. As Mr. Kiefer explained in a supplemental affidavit, the rooms in question—which comprise all of the rooms along two corridors of the facility—have been kept entirely out of use since at least 2008 because the facility has not had enough residents during that time to justify keeping those corridors in service. [DE 96-2].

In opposing summary judgment on this point, Lock Realty did not submit any evidence that any of the rooms in question have been used, or that Lutheran Homes has otherwise received reimbursements or other benefits it would not have received without the 35 certifications in question. Rather, it argues primarily that Lutheran Homes may not have reinstated the 35 certifications to the same rooms they were attached to prior to the transaction. First, however, as

8

even Lock Realty acknowledges in a footnote, the document on which it bases this argument is incomplete. Lock Realty argues that a Bed Inventory for Lutheran Homes' facility that Lock Realty received from the State shows that Lutheran Homes must have either reinstated the certification rights to different rooms or failed to reinstate them. However, each page of that document indicates that the document contains eleven pages, but the version on which Lock Realty relies has no page ten. The complete version, which Lutheran Homes submitted with its reply, accounts for all but one of the rooms in question and shows that the certifications were reinstated to their original configuration. The last room was omitted from the Bed Inventory altogether due to a clerical error, but even if, as Lock Realty argues, that means that Lutheran Homes failed to reinstate that certification, that hardly suggests that Lutheran Homes derived any value from retaining that certification.

Second, Lock Realty has not shown how any dispute as to this fact would be material. Lock Realty argues that the certifications are bed-specific, so if Lutheran Homes had patients in the beds that were subject to the 35 certifications, it must be receiving benefits from those certifications. Lock Realty never suggests, though, that the certifications cannot be transferred to different beds within a facility. With Lutheran Homes running at such low capacity, it would have derived no benefit from having the 35 extra certifications if it could have transferred any of its other surplus certifications to the rooms in which it was providing services. Therefore, even if the certification rights were reinstated to different rooms, that would still not create a material dispute of fact that would preclude summary judgment.

Finally, Lock Realty argues that Mr. Kiefer's affidavit should be disregarded because it is self-serving and did not explain what his personal knowledge of the facts in the affidavit was based on. That is not a sufficient basis to defeat summary judgment, though. Mr. Kiefer is the

President and CEO of Lutheran Homes, he was personally involved in the negotiations of the sale of the certification rights, and his name and signature appear on the Bed Inventory documents, which is ample basis to conclude that he has personal knowledge of the facts in his affidavit. Lock Realty points to nothing in the record suggesting otherwise. And as Mr. Kiefer's supplemental affidavit makes clear, the reason he knows the certification rights have not been used is because none of the rooms in question have ever been used during his tenure with Lutheran Homes, which began in 2008. That is not an obscure detail of which Mr. Kiefer may or may not have a precise recollection without relying on specific documents. Nor is Mr. Kiefer relaying subjective perceptions that may be colored by a bias—if false, his statements could be objectively disproven through Lutheran Homes' records. But Lock Realty has provided no evidence contradicting Mr. Kiefer's testimony or calling it into question, and the follow-up discovery it conducted confirmed that none of the rooms in question have been occupied. Moreover, the Seventh Circuit has repeatedly stated that merely labeling testimony as "self-serving" is not a basis to disregard it at summary judgment. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Thus, Lock Realty has not created any genuine dispute as to the credibility of Lutheran Homes' evidence, either.

In summary, Lutheran Homes has produced sufficient evidence to prove that it received no benefit or value from retaining the certification rights, meaning the amount of money required to put it in the same position it would have been in absent the breach is $350,000. In response, Lock Realty has produced no evidence of its own to contradict Lutheran Homes' evidence that it did not benefit from retaining the certification rights. Nor did Lock Realty identify any basis for

10

a reasonable juror to disbelieve Lutheran Homes' uncontradicted evidence. Accordingly, the Court finds that there is no genuine dispute of fact that Lutheran Homes' actual damages as a result of Lock Realty's breach are $350,000, prior to Lock Realty's affirmative defense that Lutheran Homes failed to mitigate its damages.[3] Lutheran Homes' motion for summary judgment is therefore granted in that respect.

**B.     Prejudgment Interest**

Lutheran Homes also seeks summary judgment that it is entitled to prejudgment interest. The Court declines to resolve this issue for two reasons. First, this request is outside the scope of leave that the Court granted Lutheran Homes to file a second motion for summary judgment. The Court's previous order granted Lutheran Homes leave to move for summary judgment "as to the measure of its damages prior to any failure-to-mitigate defense," not as to whether or in what amount it is also entitled to prejudgment interest. Second, it is premature at this stage of the case to decide whether Lutheran Homes is entitled to prejudgment interest. Though Lutheran Homes' motion itself seeks prejudgment interest on its entire damages amount of $350,000, its brief appears to concede that it can only receive prejudgment interest on the amount of damages actually awarded. If the jury finds that Lutheran Homes failed to reasonably mitigate its damages, that amount could be substantially less than $350,000. Moreover, this is simply not the type of issue that needs to be decided in advance of trial, and Lutheran Homes has offered no reason why this issue should be taken up now. Therefore, the Court denies the motion in this respect.

---

[3] Having resolved the motion on that basis, the Court need not consider Lutheran Homes' alternative argument that Lock Realty is estopped from contesting the amount of damages prior to mitigation.

## IV.  CONCLUSION

Lutheran Homes' motion for summary judgment is GRANTED in part and DENIED in part. The Court finds that Lutheran Homes' damages prior to any affirmative defense for failure to mitigate are $350,000. The Court declines to rule at this time on whether Lutheran Homes is entitled to pre-judgment interest.

SO ORDERED.

ENTERED: April 6, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court